

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

*610 Federal Plaza*
*Central Islip, New York 11722*

CPK
F. #2016R01391

June 2, 2022

By ECF

Honorable Denis R. Hurley
United States District Judge
United States Courthouse
934 Federal Plaza
Central Islip, New York 11722

       Re: <u>United States v. Hal Abrahamson, CR 18-314(DRH)</u>

Dear Judge Hurley:

      The undersigned Assistant United States Attorney respectfully submits this letter in opposition to the defendant's request for early termination of supervised release in the above-captioned matter. The defendant, Hal Abrahamson, was convicted in 2019 for offenses related to a health care fraud scheme that lasted several years, including billing for services that were never performed, billing for work purportedly done by another podiatrist with a higher reimbursement rate, and upcoding on procedures actually performed by defendant. Defendant was sentenced to one year and one day of incarceration followed by two years of supervised release. In addition, the Court imposed a $50,000 fine and ordered that Defendant pay $869,651.99 in restitution.

      Defendant's health care scheme was long term and of an egregious nature. Regarding the fraudulent billing for skin grafts, Defendant billed for this procedure 1,092 times over a four year period in which a comparable podiatrist billed once and a podiatrist in the same practice billed five times. Regarding the fraudulent billing for wound packing, Defendant billed for this procedure 757 times over a four-year period and would routinely add this to his false billing under another podiatrist's name and, notably, there were patients who were interviewed that were billed for wound packing and stated the procedure was not done. As to the billing done under another podiatrist with a higher reimbursement rate, when the insurance reimbursements arrived, Defendant would deposit these insurance reimbursements that were not payable to him into his bank accounts.

      On April 22, 2020, Defendant was released from prison on medical furlough after serving approximately three months in prison. Defendant did not begin serving his term of supervised release until November 23, 2020, set to terminate on November 22, 2022. In his May 31, 2022 letter motion to the Court seeking early termination of his supervised release, the defendant cites his compliance with the terms and conditions of his supervised release, his payment of the Court

imposed fine and Court ordered restitution in full, his volunteer work with Remote Area Medical and his ongoing complications due to Covid-19 as the basis for the Court to grant his application. The defendant has not indicated any particular hardship that supervision is causing him. Indeed, from the defendant's motion, it is clear that supervision has not caused him additional difficulties that exceed minor inconveniences. Nor has Defendant established any behavior that would qualify as exemplary under the standard established by Title 18, United States Code, Section 3583(e), which is set forth below.

Title 18, United States Code, Section 3583(e), which governs modification of supervised release, provides that "[t]he court may, after considering the factors set forth in 18 U.S.C. Section 3553(a), terminate a term of supervised release … if it is satisfied that such action is warranted by the conduct of the defendant released ad in the interest of justice." 18 U.S.C. 3583(e)(1); see, e.g., United States v. Lussier, 104 F.3d 32, 36 (2d Cir. 1997). The Second Circuit has held that this provision allows a district court to "revoke, discharge, or modify terms and conditions of supervised release … in order to account for new or unforeseen circumstances. Lussier, 104 F.3d at 36. Changed circumstances, or exceptionally good behavior, which may render a previously imposed condition "too harsh or inappropriately tailored to serve the general punishment goals of 3553(a)." Id.

In applying this standard, courts in this district have repeatedly held that even full compliance with the terms of supervised release and an unblemished record while on release do not rise to the level of "exceptionally good behavior" warranting termination of supervision. See United States v. Bastien, 111 F.Supp.3d 315, 322 (E.D.N.Y. 2015); United States v. McKay, 352 F.Supp.2d 359, 361 (E.D.N.Y. 2005); United States v. Fenza, 2013 WL 3990914 No. CR 03-0921 (E.D.N.Y. Aug. 2, 2013). In reaching these decisions, the courts have recognized that "full compliance with the terms of supervised release is what is expected of a person under the magnifying glass of supervised release and does not warrant early termination." Fenza, 2013 WL 3990914, at *2. Satisfactory compliance with the terms of supervision alone cannot be the basis for termination of supervision, otherwise, the purpose of supervision would be thwarted. See generally, McKay, 352 F.Supp.2d at 361 (citing United States v. Medina, 17 F.Supp.2d 245 (S.D.N.Y. 1998)).

Here, Defendant presents the Court with a record of full compliance with the terms of his supervision to date. He has also paid the Court fine and restitution in full. With regards to community contributions, Defendant has volunteered to assist a non-profit medical organization and delivered meals to persons in need. However, the progress presented by defendant, while commendable, does not rise to the level of "exceptionally good behavior." Defendant's payment of the Court-imposed fine and restitution is merely compliance with the terms of his sentencing and does not rise to the level of "exceptionally good behavior." See United States v. Stein, 09-CR-377-RPK, 2020 U.S. Dist. LEXIS 126902, at *1, 4 (E.D.N.Y. July 19, 2020). Similarly, volunteer work or being "civically active" in the community is also not sufficient to establish "exceptionally good behavior." See United States v. Schuster, 17-CR-016-NSR, 2018 U.S. Dist. LEXIS 126031, at *1, 2, 5 (S.D.N.Y. July 26, 2018); United States v. Perso, 15-CR-173-03-NSR, 2022 U.S. Dist. LEXIS 126960 at * 4-5 (S.D.N.Y. July 27, 2018).

Given the egregious and long-term nature of Defendant's crimes, the Court should consider the nature and circumstances of the offense and whether the seriousness of Defendant's

conduct was reflected in his sentence. See United States v. Filocomo, 02-CR-307-31-NGG, 2022 U.S. Dist. LEXIS 6349, at *1 (E.D.N.Y. Jan. 12, 2022). The goal of general deterrence would be undermined were Defendant to be granted termination of his supervised release. The Presentence Investigation Report ("PSR") set the guidelines at Level 19, which has a range of 30-37 months. PSR at § 78. Defendant received a sentence substantially below the range recommended under the PSR. Were the sentence to be lightened further, it would exacerbate sentencing disparities for other defendants who were convicted for similar offenses. See Stein, 2020 U.S. Dist. LEXIS 126902 at *5-6. Defendant also received a medical furlough, which enabled him to be released only three months into his sentence. It would not be in the interest of justice to grant Defendant further reprieve based on the lingering effects of Covid-19. Additionally, Defendant failed to provide any evidence that his illness has rendered the conditions of his supervised release "too harsh" or "inappropriately tailored to serve the general punishment goals of 3553(a)." See Lussier, 104 F.3d at 36.

For all of the reasons stated above, the government respectfully requests that the Court deny the defendant's request for early termination of the term of supervised release imposed at the time of sentencing.

                                          Respectfully submitted,

                                          BREON PEACE
                                          United States Attorney

By:    */s/ Charles P. Kelly*
           Charles P. Kelly
           Assistant U.S. Attorney
           (631) 715-7866

---

The government thanks Zachary Stern, a second-year law student at Boston College Law School, for his significant contributions to this letter.